UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | No. 09-157 |
| CHARLES RAYMOND | SECTION I |

### ORDER AND REASONS

Before the Court is the opposition[1] of defendant, Charles Raymond ("Raymond"), to the government's notice[2] of intent to introduce evidence pursuant to Rule 404(b) of the Federal Rules of Evidence. Raymond requests that the Court exclude the evidence offered by the government pursuant to Rule 404(b). For the following reasons, defendant's motion is **DENIED IN PART** and **DEFERRED IN PART**.

*BACKGROUND*

Count 1 of the superseding indictment charges that on or about June 9, 2004, Raymond and others conspired to use, carry, brandish, and discharge a firearm during and in relation to a crime of violence, to wit: carjacking, in violation of Title 18, United States Code, Section 924(c); all in violation of Title 18, United States Code, Section 924(o).

Count 2 of the superseding indictment charges that on or about June 9, 2004, Raymond and others, aiding and abetting each other, did knowingly use carry, brandish, and discharge a firearm during and in relation to a crime of violence, to wit: carjacking; all in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and (B)(i) and (2).

---

[1] R. Doc. No. 191.

[2] R. Doc. No. 188.

1

Count 3 of the superseding indictment charges that on or about June 9, 2004, Raymond and others, aiding and abetting each other, with the intent to cause death and serious bodily harm, and by force, violence, and intimidation, took a motor vehicle from the person and presence of Nathaniel Robertson and intentionally caused the death of Nathaniel Robertson; all in violation of Title 18, United States Code, Sections 2119 and 2.

Count 4 of the superseding indictment charges that on or about June 9, 2004, Raymond and others, aiding and abetting each other, did knowingly use, carry, brandish, and discharge a firearm during and in relation to a crime of violence, to wit: carjacking, and in the course of such violation caused the death of Nathaniel Robertson, which killing is a murder as defined in Title 18, United States Code, Section 1111; all in violation of Title 18, United States Code, Sections 924(j) and 2.

The government has filed a notice of intent to offer evidence of the facts surrounding and including Raymond's prior convictions in Arkansas for possession of a firearm by certain persons, aggravated robbery, battery in the first degree, theft of property, and kidnapping.  The government has also advised that it intends to offer evidence of Raymond's involvement in an uncharged bank robbery in New Orleans, Louisiana.  Raymond seeks to exclude the evidence of Raymond's prior bad acts, arguing that the evidence only shows Raymond's bad character.

## *LAW*

a. <u>Intrinsic evidence</u>

In order to determine whether "other acts" evidence is admissible, the Court must first determine whether the evidence is intrinsic or extrinsic to the charged crime. *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1999).  "Other act" evidence is intrinsic when the evidence of the other act and evidence of the crime charged are "inextricably intertwined" or the other acts

are part of a "single criminal episode" or the other acts were "necessary preliminaries" to the crime charged. *Id.* (quoting *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990)). Such evidence is admissible "to complete the story of the crime by proving the immediate context of events in time and place," *id.*, or "so that the jury may evaluate all the circumstances under which the defendant acted." *United States v. Navarro*, 169 F.3d 228, 233 (5th Cir. 1999) (quoting *United States v. Royal*, 972 F.2d 643, 647 (5th Cir. 1992)); *see United States v. Infante*, 404 F.3d 376, 388 (5th Cir. 2005). There is no allegation in this case that the evidence sought to be introduced by the government is intrinsic evidence.

   b. <u>Extrinsic Evidence</u>

If evidence is not "intrinsic," the next question is whether the evidence is admissible pursuant to Rule 404(b) of the Federal Rules of Evidence.[3] "Rule 404(b)…prohibits the admission of evidence of other crimes or bad acts to prove the character of a person." *United States v. Thomas*, 348 F.3d 78, 85-86 (5th Cir. 2003). In *United States v. Beechum*, the Fifth Circuit outlined a two-step test to determine the admissibility of extrinsic evidence or "other acts." 582 F.2d 898, 910 (5th Cir. 1978). "Under *Beechum*, evidence of extrinsic offenses is admissible if it is (1) relevant to an issue other than the defendant's character, and (2) the incremental probative value of the evidence is not substantially outweighed by the danger of unfair prejudice to the defendant." *United States v. Peters*, 283 F.3d 300, 312 (5th Cir. 2002).

---

[3] Rule 404(b) of the Federal Rules of Evidence states:

> Other Crimes, Wrongs, or Acts.--Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

"'Evidence is relevant if it makes the existence of any fact at issue more or less probable than it would be without the evidence.'" *United States v. Williams*, 957 F.2d 1238, 1244 (5th Cir. 1992) (quoting *United States v. Williams*, 900 F.2d 823, 826 (5th Cir. 1990)). The relevance of an extrinsic offense "is a function of its similarity to the offense charged," and similarity must be determined with respect to the particular issue to which the extrinsic offense is addressed. *Beechum*, 582 F.3d at 911. In any event, similar act evidence is relevant "only if the jury can reasonably conclude that the extrinsic act occurred and that the defendant was the actor." *United States v. Bailey*, 111 F.3d 1229, 1233 (5th Cir. 1997).

In making its relevance determination, the Court is not required to make a preliminary finding that an extrinsic act or offense in fact occurred. *Huddleston v. United States*, 485 U.S. 681, 688–89 (1988). The Court may instead admit extrinsic offense evidence under Federal Rule of Evidence 104(b), which requires the Court to "examine[] all the evidence in the case and decide[] whether the jury could reasonably find the conditional fact … by a preponderance of the evidence ." *Id.* at 690. The Court has broad discretion to control the order of proof at trial, and may allow the Government to introduce evidence concerning a similar act subject to a later assessment of whether sufficient evidence has been offered to permit the jury to make the requisite finding. *Id.* Only if the Government ultimately fails to meet this "minimal standard of proof" must the Court instruct the jury to disregard the evidence that was conditionally admitted. *Id.*[4]

---

[4] As stated by the Fifth Circuit:

> Such questions of relevance conditioned on a fact are dealt with under Federal Rule of Evidence 104(b). Rule 104(b) provides: "When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." In determining whether the Government has introduced sufficient evidence to meet rule 104(b), the trial court neither weighs credibility nor makes a finding that the government has

With respect to substantial prejudice, the second part of the *Beechum* test "calls for a commonsense assessment of all the circumstances surrounding the extrinsic offense." *Beechum*, 582 F.2d at 914.  As another section of this Court has explained,

> [t]he Court considers the availability of other means of proof of the charged offense, and it is the "incremental probity" of the extrinsic evidence that must be balanced against its potential for undue prejudice. *Id.*  [For example], if a defendant's intent is not contested, the probative value of extrinsic evidence as to that issue will be inconsequential. *Id.*  Furthermore, the probative value of an extrinsic offense "correlates positively" with its similarity to a charged offense. *Id.* at 915. If the extrinsic offense and the charged offense are dissimilar in most respects, "the extrinsic offense may have little probative value to counterbalance the inherent prejudice of this type of evidence." *Id.*  Finally, the Court considers the amount of time separating the extrinsic offense from the charged offense. *Id.*  Temporal remoteness is not dispositive, but it "depreciates the probity of the extrinsic offense." *Id.*

*United States v. Hebert*, 2011 WL 2214747, at *2 (E.D. La. Jun. 6, 2011).  The probative value of the evidence, the government's need for the evidence, and the Court's limiting instructions are all relevant.  *See United States v. Richards*, 204 F.3d 177, 199 (5th Cir. 2000).

### *ANALYSIS*

a. <u>Arkansas Crimes</u>

The government seeks to introduce evidence relating to Raymond's prior convictions in Arkansas.  According to the government, on or about May 20, 2008, Raymond and his half-brother, Terrell Dorsey ("Dorsey"), confronted their victim, Ozzie Banks ("Banks"), after he exited his truck and began to walk toward an apartment complex.  Raymond, brandishing a firearm, forced Banks back inside his truck.  Raymond, now in the driver's seat, and Dorsey

---

> proved the conditional fact by a preponderance of the evidence.  The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence.

*Williams*, 900 F.2d at 826 (quoting *Huddleston v. United States*, 485 U.S. 681, 689-90, 108 S. Ct. 1496, 1501, 99 L. Ed. 2d 771, 782-83 (1989)).

drove Banks' truck around town with their victim face down and out of view.  At one point, Banks resisted and he was shot in the leg by Raymond,[5] after which Raymond and Dorsey tied a shirt around his head to blindfold him.

Raymond and Dorsey drove the truck to Raymond's residence, where they tried to force Banks into the house.  Banks resisted, at which point Dorsey began hitting Banks with his gun.  Banks managed to flee on foot, hearing gun shots behind him and discovering that he had again been shot in the leg.  Nevertheless, he kept running and he avoided further assault from Raymond and Dorsey.

Evidence of the crimes committed in Arkansas is admissible if relevant to an issue other than the defendant's character. *See Beechum*, 582 F.2d at 911.  In this case, since Raymond plans to raise an alibi defense,[6] the government seeks to offer the evidence to show the identity of the defendant. *See* Fed. R. Evid. 404(b); *United States v. Law*, 252 F.3d 1357 (5th Cir. 2001) ("evidence of an earlier crime is admissible to show the identity of the defendant").  In determining whether to admit extrinsic evidence to show identity, "the likeness of the offenses is the crucial consideration.  The physical similarity must be such that it marks the offenses as the handiwork of the accused.  In other words, the evidence must demonstrate a modus operandi." *Beechum*, 582 F.2d at 912 n.15.

The Court finds the extrinsic evidence of the Arkansas crimes admissible based on the physical similarity between the crimes alleged in this case and the crimes committed in

---

[5] During a status conference, the government advised the Court that Raymond shot Banks during the course of the kidnapping.

[6] During a status conference, counsel for Raymond advised the Court that Raymond plans to assert an alibi defense and that he does not plan to challenge the intent of the actual perpetrator of the crime.  However, should the jury reject his alibi defense, Raymond did not waive his right to have the government prove that he had the requisite criminal intent.

Arkansas.⁷  In both instances, Raymond acted in concert with his relatives and others,⁸ he used a firearm in order to rob a victim of his vehicle, and he then shot the victim multiple times. *See United States v. Brawner*, 141 F.3d 1160 (4th Cir. 1998) (finding that evidence of defendant's prior armed robbery, particularly with respect to defendant's association with the same cohort and possession of a firearm, was properly admitted in a prosecution for carjacking in order to show identity).

The Court notes that approximately four years elapsed between the crimes alleged and the Arkansas crimes.  "Although the remoteness of the extrinsic acts evidence may weaken its probative value, the age of the prior conviction does not bar its use under Rule 404." *United States v. Broussard*, 80 F.3d 1025, 1040 (5th Cir. 1996) (a prior conviction that occurred more than ten years before the charged offense was admissible pursuant to Rule 404(b)); *United States v. Pollani*, 218 F.3d 743, *3 (5th Cir. 2000) (a prior conviction that occurred eight years before the charged offense was admissible pursuant to Rule 404(b)).  "[The passage of time] is rather only one factor in determining probative value that is to be considered along with similarity of the acts and other evidence available to prove the disputed element." *United States v. Chandler*, 368 Fed. Appx. 495, 500 (5th Cir. 2010) (a prior conviction that occurred seventeen year before the charged offense was admissible pursuant to Rule 404(b)).

In this case, the similarity of the crimes imbues the prior convictions with considerable probative value with respect to identity. *See United States v. Gay*, 2011 WL 1413065, *3 (11th Cir. Apr. 14, 2011) (prior convictions that occurred twelve years before the charged offense were

---

⁷ Since Raymond pleaded *nolo contendere* to possession of a firearm by certain persons, aggravated robbery, battery in the first degree, theft of property, and kidnapping based on the incident, the Court finds that the jury can reasonably conclude that the act occurred and that Raymond was the actor.

⁸ In Arkansas, Raymond acted in concert with his half-brother, Terrell Dorsey.  In this case, the government alleges that Raymond acted in concert with another half-brother, Darnell Dorsey, and other co-defendants.

7

admissible pursuant to Rule 404(b) to prove identity of the defendant); *United States v. Oman*, 427 F.3d 1070, 1075 (8th Cir. 2005) (prior convictions that occurred seven years before the charged offense were admissible pursuant to Rule 404(b) to prove identity of the defendant). Therefore, the four-year period between the crimes alleged and the Arkansas crimes does not prevent admission of the evidence pursuant to Rule 404(b).

The Court also finds that the risk of unfair prejudice to Raymond does not substantially outweigh the probative value of the extrinsic evidence. The Court will give the jury a cautionary instruction in order to minimize any possible prejudice that may result from the introduction of such evidence. *See Brawner*, 141 F.3d at *2. Accordingly, the government may offer evidence relating to the crimes committed in Arkansas.[9]

    b.  <u>New Orleans Bank Robbery</u>

The government also seeks to introduce evidence relating to an uncharged bank robbery that took place in New Orleans. According to the government, Raymond, along with several accomplices, robbed a Hibernia Bank on or about January 15, 2005. Raymond, Julio Otero ("Otero"), and another half brother, Darnell Dorsey, went into the bank, while Adrian Alexis ("Alexis") waited in the getaway vehicle. Once inside, Raymond allegedly pointed his assault pistol at the tellers and people in the lobby. After allegedly robbing the bank, Raymond, Otero, and Darnell Dorsey fled in Alexis's getaway vehicle and drove to Raymond's grandmother's house where they counted and divided the stolen money. Criminal charges have not been brought against Raymond for his alleged participation in the bank robbery.

---

[9] Since the Court finds the evidence of the Arkansas crimes admissible for the purpose of showing identity, the Court does not address the admissibility of such evidence for the purpose of showing opportunity, intent, or plan. However, the Court notes that where intent is not normally inferable from the nature of the act charged, "and the defendant fails to give enforceable pre-trial assurances that he intends not to dispute criminal intent, the Government's case-in-chief may include such extrinsic offense evidence as would be admissible if intent were actively contested." *United States v. Webb*, 625 F.2d 709, 710 (5th Cir. 1980).

At this point, the probative value of the extrinsic act evidence relating to the bank robbery is not readily apparent.  Other than the use of firearms, participation by relatives, and the fact that something of value was taken through the use of force, the bank robbery and the crimes alleged in this case are not sufficiently similar to be admissible for the purpose of demonstrating the identity of the defendant.  In addition, as the Court previously explained, defense counsel for Raymond has advised the Court that he plans to assert an alibi defense and that he does not plan to challenge the intent of the actual perpetrator of the crime.  Notwithstanding, it is possible that Raymond may, for example, challenge certain aspects of Alexis's testimony, in which case the extrinsic act evidence may well be probative of the association between Raymond and Alexis or be admissible for other purposes not yet discernable.

At a later point at trial, the Court will be better positioned to evaluate the probity and relevance of the government's evidence regarding the association between Raymond and Alexis or any other contested issues.  The Court will also be able to evaluate the strength of the government's case as to any particular issue.  Furthermore, the weighing of the second *Beechum* factor, *i.e.* undue prejudice, is also better determined at later time.  Accordingly, the Court defers its ruling with respect to the admissibility of extrinsic evidence relating to Raymond's alleged involvement in the New Orleans bank robbery.

### *CONCLUSION*

For the foregoing reasons,

**IT IS ORDERED** that defendant's request to exclude evidence relating to his convictions in Arkansas is **DENIED**.

**IT IS FURTHER ORDERED** that the Court **DEFERS** its ruling with respect to defendant's request to exclude evidence relating to his involvement in the New Orleans bank

robbery.  Until the Court has made its ruling, all counsel and witnesses are **ORDERED** not to refer to the alleged bank robbery without prior approval of the Court.

New Orleans, Louisiana, October 3, 2011.

                                                **LANCE M. AFRICK**
                                      **UNITED STATES DISTRICT JUDGE**